**Fill in this information to identify the case:**

United States Bankruptcy Court for the <u>Eastern</u> District of <u>Virginia</u>

Case number (*if known*): _____ Chapter <u>11</u>

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Madewell Inc. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | Madewell Retail Stores<br>Madewell Retail |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 20-4928609 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 225      Liberty Street<br>Number   Street | Number      Street |
| | P.O. Box |
| New York      New York      10281<br>City      State      ZIP Code | City      State      ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| New York<br>County | Number      Street |
| | City      State      ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | www.madewell.com |

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other.  Specify: _____

WEIL:\97454571\7\54457.0007

Debtor    Madewell Inc.                    Case number (if known)   20-_____ ( )
       Name

---

**7. Describe debtor's business**

**A.** *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

**B.** *Check all that apply:*

☐ Tax- exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

**C.** NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes.

4481 – Clothing Stores

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625.  If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1).  Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of  creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the  Securities and Exchange Commission according to § 13 or 15(d) of the Securities  Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than  2 cases, attach a separate list.

☒ No

☐ Yes   District _____   When _____   Case number _____
                                     MM/ DD/ YYYY

               District _____   When _____   Case number _____
                                     MM / DD/ YYYY

---

Debtor    Madewell Inc.                                                    Case number (if known)    20-_____ ( )
Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☒ Yes    Debtor    See Schedule 1            Relationship    See Schedule 1

District    Eastern District of Virginia        When    May 4, 2020
                                                                MM / DD/ YYYY
Case number, if known    _____

**11. Why is the case filed in this district?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                                    Number            Street

_____
City            State        ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact Name _____

Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

(on a consolidated basis with all affiliated debtors)

☐ 1-49          ☐ 1,000-5,000          ☒ 25,001-50,000
☐ 50-99          ☐ 5,001-10,000          ☐ 50,001-100,000
☐ 100-199        ☐ 10,001-25,000        ☐ More than 100,000
☐ 200-999

| Debtor | Madewell Inc. | Case number (if known) | 20-_____ ( ) |
|---|---|---|---|
|  | Name |  |  |

| 15. | **Estimated assets** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|---|
|  | (on a consolidated basis with all affiliated debtors) | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
|  |  | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
|  |  | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

| 16. | **Estimated liabilities** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|---|
|  | (on a consolidated basis with all affiliated debtors) | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☒ $1,000,000,001-$10 billion |
|  |  | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
|  |  | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**Request for Relief, Declaration, and Signatures**

**WARNING** – Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| 17. | **Declaration and signature of authorized representative of debtor** | ▪ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
|---|---|---|
|  |  | ▪ I have been authorized to file this petition on behalf of the debtor. |
|  |  | ▪ I have examined the information in this petition and have a reasonable belief that the information is true and correct. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    May 4, 2020
                         MM / DD  / YYYY

✗    /s/ Michael J. Nicholson _____              Michael J. Nicholson _____
Signature of authorized representative of debtor          Printed name

President and Chief Operating Officer _____
Title

| 18. | **Signature of attorney** | ✗ /s/ Tyler P. Brown _____ | Date | May 4, 2020 _____ |
|---|---|---|---|---|

Signature of attorney for debtor                                                                    MM / DD / YYYY

Tyler P. Brown _____                Ray C. Schrock, P.C. _____
Printed Name

Hunton Andrews Kurth LLP _____                Weil, Gotshal & Manges LLP _____
Firm Name

Riverfront Plaza, East Tower,
951 East Byrd Street _____                767 Fifth Avenue _____
Address

Richmond, Virginia 23219 _____                New York, New York 10153 _____
City/State/Zip

(804) 788-8200 _____                (212) 310-8000 _____
Contact Phone

tpbrown@HuntonAK.com _____                ray.schrock@weil.com _____
Email Address

28072 _____ Virginia ____
Bar Number                    State

## Schedule 1

Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case, collectively, the "**Debtors**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia.  The Debtors have filed a motion requesting that the chapter 11 cases of these entities be consolidated for procedural purposes only and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

| COMPANY |
|---|
| J. Crew Virginia, Inc. |
| Chinos Holdings, Inc. |
| Chinos Intermediate Holdings A, Inc. |
| Chinos Intermediate, Inc. |
| Chinos Intermediate Holdings B, Inc. |
| J. Crew Group, Inc. |
| J. Crew Operating Corp. |
| Grace Holmes, Inc. |
| H.F.D. No. 55, Inc. |
| J. Crew Inc. |
| J. Crew International, Inc. |
| Madewell Inc. |
| J. Crew Brand Holdings, LLC |
| J. Crew Brand Intermediate, LLC |
| J. Crew Brand, LLC |
| J. Crew Brand Corp. |
| J. Crew Domestic Brand, LLC |
| J. Crew International Brand, LLC |

JOINT RESOLUTION OF THE BOARD OF DIRECTORS
AND BOARD OF MANAGERS OF

CHINOS HOLDINGS, INC.
CHINOS INTERMEDIATE HOLDINGS A, INC.
CHINOS INTERMEDIATE, INC.
CHINOS INTERMEDIATE HOLDINGS B, INC.
J. CREW GROUP, INC.
J. CREW OPERATING CORP.
GRACE HOLMES, INC.
H.F.D. NO. 55, INC.
J. CREW INC.
J. CREW INTERNATIONAL, INC.
J. CREW VIRGINIA, INC
MADEWELL INC.
J. CREW BRAND HOLDINGS, LLC
J. CREW BRAND INTERMEDIATE, LLC
J. CREW BRAND, LLC
J. CREW BRAND CORP.
J. CREW DOMESTIC BRAND, LLC
J. CREW INTERNATIONAL BRAND, LLC

May 3, 2020

Pursuant to a joint special meeting of (a) all of the members of the board of directors or board of managers or (b) the duly-authorized special committee of Chinos Intermediate Holdings A, Inc. and J. Crew Operating Corp., as the case may be (in each case, a "Governing Body") of the entities listed above (each such entity individually, a "Company") do hereby consent to and adopt and approve, in accordance with applicable state law, the following resolutions and each and every action effected thereby:

WHEREAS:   the Governing Body has consulted with management and legal and financial advisors in evaluating the strategic alternatives available to such Company;

WHEREAS:   the Governing Body has exercised independent business judgment in the fulfillment of its duties, and in doing so, has met on various occasions to review and has had the opportunity to ask questions about the materials presented by management and the legal and financial advisors of the Company regarding the liabilities and liquidity of the Company, the various transactions available to it and the impact of the foregoing on the Company's business;

WHEREAS:   each Governing Body has reviewed the form, terms, and provisions of the transaction support agreement and the transactions contemplated thereby; and

WHEREAS:  the Governing Body desires to approve the following resolutions.

## Entry Into Transaction Support Agreement

RESOLVED: that the Company is authorized to enter into the transaction support agreement (the "Transaction Support Agreement") on terms and conditions substantially similar to those set forth in the form of Transaction Support Agreement previously provided to the applicable Governing Body;

RESOLVED: that the form, terms, and provisions of the Transaction Support Agreement and exhibits annexed thereto and the execution, delivery, and performance thereof and the consummation of the transactions contemplated thereunder by such Company are hereby authorized, approved, and are in the best interests of such Company, including the plan of reorganization contemplated thereby and the backstop agreement and credit agreements annexed thereto;

RESOLVED: that each manager, member, officer, or director of such Company (each, an "Authorized Person") is authorized, empowered, and directed, in the name and on behalf of the applicable Company, to cause such Company to enter into, execute, deliver, and perform the Transaction Support Agreement and the transactions contemplated thereby, including the plan of reorganization contemplated thereby and the backstop letters and credit agreements contemplated thereby;

RESOLVED: that each Authorized Person is authorized, empowered, and directed, in the name and on behalf of the applicable Company, to execute and deliver any amendments, supplements, modifications, renewals, extensions, or substitutions to the Transaction Support Agreement or any related documents which shall, in such Authorized Person's sole judgment, be necessary, proper, or advisable;

## Commencement of Chapter 11 Cases

RESOLVED: that the Governing Body has determined, after consultation with management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company, its shareholders, creditors, and other parties in interest that petitions be filed with the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court") by the Company seeking relief under the provisions of the Bankruptcy Code;

RESOLVED: that any Authorized Person in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, to negotiate, execute, deliver, and file with the Bankruptcy Court, in the name and on behalf of the Company, and under its corporate seal or otherwise, all plans, petitions, schedules, statements, motions, lists, applications, pleadings, papers, affidavits, declarations, orders and other documents (collectively, the "Chapter 11 Filings") (with such changes therein and additions thereto as any such Authorized Person may deem necessary, appropriate or advisable, the execution and delivery of any of the Chapter 11 Filings by any such Authorized Person with any changes thereto to be conclusive evidence that any such Authorized Person deemed such changes to meet such standard);

RESOLVED: that any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to take and perform any and all further acts and deeds that such Authorized Person deems necessary, appropriate, or desirable in connection with the Company's chapter 11 cases (the "Chapter 11 Cases") or the Chapter 11 Filings, including (a) the payment of fees, expenses and taxes such Authorized Person deems necessary, appropriate, or desirable, and (b) negotiating, executing, delivering, performing and filing any and all additional documents, schedules, statements, lists, papers, agreements, certificates or instruments (or any amendments or modifications thereto) in connection with, or in furtherance of, the Chapter 11 Cases (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard);

**Debtor-in-Possession Financing**

RESOLVED: the Governing Body does hereby adopt and resolve to adopt the resolutions attached hereto as Exhibit I and Exhibit II by the Company entities as borrower or guarantor under that certain postpetition facility (the "DIP Financing") and the credit agreement related thereto together with any exhibits and schedules, collectively, the "DIP Credit Agreement");

RESOLVED: that all capital terms used in the resolutions attached hereto as Exhibit I and Exhibit II and not otherwise defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement (as further defined in Exhibit I and Exhibit II hereto), as applicable;

**Retention of Advisors**

RESOLVED: that in connection with the Chapter 11 Cases, any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, on behalf of the Company, which such Authorized Person deems necessary, appropriate or advisable in connection with, or in furtherance of, the Chapter 11 Cases (such acts to be conclusive evidence that such Authorized Person deemed the same to meet such standard);

RESOLVED: that the firm of Lazard Frères & Co. LLC, located at 30 Rockefeller Plaza, New York, New York 10112, is hereby retained as investment banker for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval;

RESOLVED: that the law firm of Weil, Gotshal & Manges LLP, located at 767 Fifth Avenue, New York, NY 10153, is hereby retained as counsel for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval;

3

RESOLVED:    that the law firm of Hunton Andrews Kurth LLP, located at Riverfront Plaza, East Tower, 951 East Byrd Street, Richmond, Virginia 23219, is hereby retained as local counsel for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval;

RESOLVED:    that the firm of AlixPartners LLP, located at 909 3rd Avenue, New York, NY 10022, is hereby retained as financial advisor for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval;

RESOLVED:    that the firm of Omni Agent Solutions LLC, located at 1120 Avenue of the Americas, 4th Floor, New York, NY 10036, is hereby retained as claims, noticing, and solicitation agent and administrative advisor for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval;

RESOLVED:    that the firm of Hilco Real Estate, LLC located at 5 Revere Drive, Suite 320, Northbrook IL 60062, is hereby retained as real estate advisor for the Company in the Chapter 11 cases, subject to Bankruptcy Court approval;

RESOLVED:    that the firm of KPMG LLP, located at 345 Park Avenue, New York, NY 10154, is hereby retained as tax consultants for the Company in the Chapter 11 Cases, subject to Bankruptcy Court approval;

## **General**

RESOLVED:    that any Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the Company, to take and perform any and all further acts or deeds, including (a) the negotiation of such additional agreements, amendments, modifications, supplements, reports, documents, instruments, applications, notes or certificates not now known but which may be required, (b) the execution, delivery and filing (if applicable) of any of the foregoing, and (c) the payment of all fees, consent payments, taxes and other expenses as any such Authorized Person, in his or her sole discretion, may approve or deem necessary, appropriate or desirable in order to carry out the intent and accomplish the purposes of the foregoing resolutions and the transactions contemplated thereby, all of such actions, executions, deliveries, filings and payments to be conclusive evidence of such approval or that such Authorized Person deemed the same to meet such standard; and

RESOLVED:    that any and all past actions heretofore taken by any Authorized Person, any director, or any member of the Company in the name and on behalf of the Company in furtherance of any or all of the preceding resolutions be, and the same hereby are, ratified, confirmed, and approved in all respects.

**EXHIBIT I**

**DIP BORROWER RESOLUTIONS**

May 3, 2020

WHEREAS, Chinos Intermediate Holdings A, Inc., a Delaware corporation (the "DIP Borrower") desires to enter into, deliver and perform its obligations under that certain Debtor-In-Possession Credit Agreement, to be dated (as may be amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, Chinos Holdings, Inc., a Delaware corporation, as holdings ("Holdings"), Wilmington Savings Fund Society, FSB, as administrative agent for the DIP Lenders and collateral agent for the Secured Parties in the DIP Credit Agreement, the "DIP Secured Parties") (in such capacities, the "DIP Agent"), and each lender from time to time party thereto (collectively, the "DIP Lenders"), pursuant to which the DIP Lenders will make available to the Borrower a term loan credit facility in an aggregate principal amount of up to $400,000,000 (the "DIP Commitments").

WHEREAS, severally pursuant to (a)(i) the entry by the applicable bankruptcy court of the Interim DIP Order (and subsequently confirmed by the Final DIP Order) and (ii) that certain Guaranty Agreement, to be dated (as may be amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Guaranty Agreement"), by and among the entities listed in Schedule I hereto (collectively, the "DIP Guarantors") and the DIP Agent, the DIP Guarantors shall guarantee the Obligations under and as such term is defined in the DIP Credit Agreement and (b)(i) the entry by the applicable bankruptcy court of the Interim DIP Order (and subsequently confirmed by the Final DIP Order) and (ii) that certain Security Agreement, to be dated (as may be amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among, the DIP Borrower, the DIP Guarantors and the DIP Agent, the DIP Borrower and the DIP Guarantors shall grant the DIP Agent for the benefit of the DIP Secured Parties a legal, valid, continuing and enforceable security interest in the Collateral (with the priority fully described therein and in the DIP Credit Agreement) (such grant, the "Security Grant").

NOW, THEREFORE, be it:

DIP Credit
Agreement

**RESOLVED**, that the DIP Borrower is hereby authorized to execute and deliver the DIP Credit Agreement, the DIP Security Agreement and the Additional DIP Documents (as defined below) to which the DIP Borrower is a party or signatory and the performance of its rights and obligations thereunder and transactions contemplated thereby thereunder and under the Interim DIP Order and the Final DIP Order, including, without limitation, the incurrence of debt and the granting of security interests (including without limitation, the Security Grant), and such other actions, and omissions to take actions, as are necessary, appropriate or desirable in connection with the foregoing, and that any officer (including, without limitation, any chief executive officer, chief financial officer, chief accounting officer, treasurer, assistant treasurer, president, vice president secretary and assistant secretary) of the DIP

Borrower (each, an "<u>Authorized Officer</u>"), be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver the DIP Credit Agreement, the DIP Security Agreement and the Additional DIP Documents to which the DIP Borrower is a party or signatory and the performance of its obligations thereunder and under the Interim DIP Order and the Final DIP Order, including, without limitation, the incurrence of debt and the granting of security interests (including, without limitation, the Security Grant) and such other actions, and omissions to take actions, as are necessary, appropriate or desirable in connection with the foregoing, with such modifications thereto as such Authorized Officer executing the same shall approve, his or her execution thereof being deemed conclusive evidence of such approval; and be it further

**RESOLVED**, that any Authorized Officer of the DIP Borrower be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver, attest to such execution and delivery of, in the name of and on behalf of the DIP Borrower, all such other agreements, all such other agreements (including, without limitation, any security agreements, guaranty agreements, mortgages, and control agreements), commitment letters, filings, motions and orders (including, without limitation, the Interim DIP Order and the Final DIP Order), certificates, instruments and other writings (the "<u>Additional DIP Documents</u>"), and to take all such other actions, as such Authorized Officer may deem necessary or appropriate in connection with the transactions contemplated by these resolutions; and be it further

**RESOLVED**, the DIP Borrower will obtain benefits from the DIP Credit Agreement and the DIP Security Agreement and it is in the best interest of the DIP Borrower to enter into the DIP Credit Agreement and the DIP Security Agreement and be bound by the Interim DIP Order and the Final DIP Order; and be it further

**RESOLVED**, that the DIP Borrower hereby authorizes, adopts and approves, in all respects the form, terms and provisions of the DIP Credit Agreement, the DIP Security Agreement, the Interim DIP Order, the Final DIP Order and any other Additional DIP Documents substantially in the form to be executed and delivered; and be it further

DIP Borrower
Documents

**RESOLVED**, that the DIP Borrower is authorized to update the DIP Credit Agreement, the DIP Security Agreement and any Additional DIP Documents and the transactions contemplated thereby and is authorized to enter into any Additional DIP Documents to which the DIP Borrower is or is contemplated to be a party and any other agreements, documents, certificates or filings that any Authorized Officer of the DIP Borrower

2

determines are necessary, appropriate or desirable in connection with the DIP Credit Agreement, the DIP Security Agreement, the Interim DIP Order, the Final DIP Order and any other Additional DIP Documents to which the DIP Borrower is or is contemplated to be a party, as security for the Obligations (as defined in the DIP Credit Agreement) or any portion of them and as otherwise provided in the DIP Credit Agreement, the DIP Security Agreement or the Additional DIP Documents; and be it further

**RESOLVED**, that any Authorized Officer of the DIP Borrower be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver such additional assignments, stock powers, powers of attorney, notices, lien perfection documents, consents to assignment, subordination agreements, interest rate protection and other hedging agreements, letters of credit and master letter of credit agreements, cash management agreements, assignments, collateral assignments, fee letters and other customary loan documents, third party collateral access agreements, bailee letters, deposit account control agreements, securities account control agreements, insurance certificates, UCC financing statements, mortgages, deeds of trust, warehouse notifications, collateral assignments, and other customary secured loan documents and other agreements, certificates, instruments and other writings as the DIP Agent may request or as may be necessary or appropriate in the sole judgment of such Authorized Officer to create, preserve and perfect the security interests and other liens required or contemplated pursuant to, or otherwise to give effect to any of the transactions contemplated by, any of the Additional DIP Documents; and be it further

**RESOLVED**, that any Authorized Officer of the DIP Borrower be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to execute and deliver all such other agreements, certificates, instruments and other writings, and to take all such other actions, as any such Authorized Officer may deem necessary or appropriate in connection with the transactions contemplated by these resolutions; and be it further

<u>Ratification</u>    **RESOLVED**, that all actions, proceedings, elections, appointments, approvals, assignments, grants, transfers, agreements, acts, declarations, instruments, documents, executions and transactions, whether done, taken, executed or acted upon, or purported to be done, taken, executed or acted upon prior to the date hereof, by or on behalf of the DIP Borrower in connection with the DIP Credit Agreement, the DIP Security Agreement or any of the Additional DIP Documents, be, and the same hereby are, approved, adopted, ratified and confirmed in all respects; and be it further

3

General Authority

**RESOLVED**, that any Authorized Officer of the DIP Borrower be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of the DIP Borrower, to take such additional actions, to perform all acts and deeds, and to execute, ratify, certify, deliver, file and record such additional agreements, certificates, instruments and other writings as any of them may deem necessary or appropriate to implement the provisions of the foregoing resolutions (including, without limitation, amendments, restatements, replacements or other modifications of any of the foregoing documents) or otherwise in connection with the DIP Credit Agreement, the DIP Security Agreement or any of the Additional DIP Documents, to appoint such agents on behalf of the DIP Borrower as any such Authorized Officer may deem necessary or appropriate in connection with the foregoing resolutions or to comply with the requirements of the agreements, certificates, instruments and other writings approved by the foregoing resolutions, the authority for the taking or performing of such actions, acts or deeds and the execution, ratification, certification, delivery, filing or recording of such agreements, certificates, instruments or other writings to be conclusively evidenced thereby; and be it further

**RESOLVED**, that, to the extent the DIP Borrower serves as the sole member, managing member or other governing body (collectively, a "Controlling Company"), in each case, of any other company (a "Controlled Company"), each Authorized Officer, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, severally authorized, empowered and directed in the name and on behalf of such Controlling Company (acting for such Controlled Company in the capacity set forth above, as applicable), to take all of the actions on behalf of such Controlled Company that an Authorized Officer is herein duly authorized to take on behalf of such Controlling Company; and be it further

**RESOLVED FURTHER**, that the authority conferred upon each Authorized Officer by these resolutions is in addition to, and shall in no way limit, such other authority as such Authorized Officer may have with respect to the subject matter of the foregoing resolutions, and that the omission from this resolution of any agreement or other arrangement contemplated by any of the agreements, instruments or documents described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments or documents described in the foregoing resolutions shall in no manner derogate from the authority of such Authorized Officer to take all actions necessary, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by and the intents and purposes of the foregoing resolutions.

WEIL:\97454571\7\54457.0007

## SCHEDULE I

## COMPANIES

CHINOS HOLDINGS, INC., a Delaware corporation
CHINOS INTERMEDIATE, INC., a Delaware corporation
CHINOS INTERMEDIATE HOLDINGS B, INC., a Delaware corporation
J. CREW GROUP, INC., a Delaware corporation
J. CREW OPERATING CORP., a Delaware corporation
J. CREW INC., a Delaware corporation
J. CREW INTERNATIONAL, INC., a Delaware corporation
GRACE HOLMES, INC., a Delaware corporation
H.F.D. NO. 55, INC., a Delaware corporation
MADEWELL INC., a Delaware corporation
J. CREW VIRGINIA, INC., a Virginia corporation
J. CREW BRAND HOLDINGS, LLC, a Delaware limited liability company
J. CREW BRAND INTERMEDIATE, LLC, a Delaware limited liability company
J. CREW BRAND, LLC, a Delaware limited liability company
J. CREW DOMESTIC BRAND, LLC, a Delaware limited liability company
J. CREW BRAND CORP., a Delaware corporation
J. CREW INTERNATIONAL BRAND, LLC, a Delaware limited liability company

<u>**EXHIBIT II**</u>

<u>**DIP GUARANTOR RESOLUTIONS**</u>

May 3, 2020

WHEREAS, Chinos Intermediate Holdings A, Inc., a Delaware corporation (the "<u>DIP Borrower</u>") desires to enter into, deliver and perform its obligations under that certain Debtor-In-Possession Credit Agreement, to be dated (as may be amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among the DIP Borrower, as borrower, Chinos Holdings, Inc., a Delaware corporation, as holdings ("<u>Holdings</u>"), Wilmington Savings Fund Society, FSB, as administrative agent for the DIP Lenders and collateral agent for the Secured Parties in the DIP Credit Agreement, the "<u>DIP Secured Parties</u>") (in such capacities, the "<u>DIP Agent</u>"), and each lender from time to time party thereto (collectively, the "<u>DIP Lenders</u>"), pursuant to which the DIP Lenders will make available to the Borrower a term loan credit facility in an aggregate principal amount of up to $400,000,000 (the "<u>DIP Commitments</u>").

WHEREAS, severally pursuant to (a)(i) the entry by the applicable bankruptcy court of the Interim DIP Order (and subsequently confirmed by the Final DIP Order) and (ii) that certain Guaranty Agreement, to be dated (as may be amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "<u>DIP Guaranty Agreement</u>"), by and among the entities listed in Schedule I hereto (collectively, the "<u>DIP Guarantors</u>") and the DIP Agent, the DIP Guarantors shall guarantee the Obligations under and as such term is defined in the DIP Credit Agreement (such guarantee, the "<u>Guaranty of Obligations</u>") and (b)(i) the entry by the applicable bankruptcy court of the Interim DIP Order (and subsequently confirmed by the Final DIP Order) and (ii) that certain Security Agreement, to be dated (as may be amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "<u>DIP Security Agreement</u>"), by and among, the DIP Borrower, the DIP Guarantors and the DIP Agent, the DIP Borrower and the DIP Guarantors shall grant the DIP Agent for the benefit of the DIP Secured Parties a legal, valid, continuing and enforceable security interest in the Collateral (with the priority fully described therein and in the DIP Credit Agreement) (such grant, the "<u>Security Grant</u>").

NOW, THEREFORE, be it:

| | |
|---|---|
| DIP Credit Agreement | **RESOLVED**, that each DIP Guarantor is hereby authorized to execute and deliver the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement and any Additional DIP Guarantor Documents (as defined below) in its capacity as guarantor, and to perform its obligations and transactions contemplated thereby thereunder and under the Interim DIP Order and the Final DIP Order, including, without limitation, the granting of security interests (including, without limitation, the Security Grant), the granting of pledges, and the making of guarantees thereunder (including, without limitation, the Guaranty of Obligations), and to take such actions, as are necessary, appropriate or desirable in connection with the foregoing, and that any officer |

(including, without limitation, any chief executive officer, chief financial officer, chief accounting officer, treasurer, assistant treasurer, president, vice president secretary and assistant secretary) of such DIP Guarantor (each, an "<u>Authorized Officer</u>") be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of such DIP Guarantor, to execute and deliver the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement and any Additional DIP Guarantor Documents and to perform such DIP Guarantor's obligations thereunder and under the Interim DIP Order and the Final DIP Order, including, without limitation, the granting of security interests (including, without limitation, the Security Grant) and the making of guarantees thereunder (including, without limitation, the Guaranty of Obligations), and to take such other actions as are necessary, appropriate or desirable in connection with the foregoing, with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement and any Additional DIP Guarantor Documents having such modifications as such Authorized Officer executing the same shall approve, his or her execution thereof being deemed conclusive evidence of such approval; and be it further

**RESOLVED**, that any Authorized Officer of each DIP Guarantor be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of such DIP Guarantor, to execute and deliver, attest to such execution and delivery of, in the name of and on behalf of the DIP Guarantor, all such other agreements (including, without limitation, any security agreements, guaranty agreements, mortgages, and control agreements), commitment letters, filings, motions and orders (including, without limitation, the Interim DIP Order and the Final DIP Order), certificates, instruments and other writings (the "<u>Additional DIP Guarantor Documents</u>"), and to take all such other actions, as such Authorized Officer may deem necessary or appropriate in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement, the Interim DIP Order, the Final DIP Order and any Additional DIP Guarantor Documents; and be it further

**RESOLVED**, that each DIP Guarantor is authorized to execute, deliver and perform such other agreements, amendments, ratifications and confirmations as the DIP Agent may require in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement and any Additional DIP Guarantor Documents to which such DIP Guarantor is or is contemplated to be a party and any other agreements, documents, certificates or filings that any Authorized Officer of such DIP Guarantor determines are necessary, appropriate or desirable in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement, the Interim DIP Order, the Final DIP Order and the Additional DIP Guarantor Documents to which

2

such DIP Guarantor is or is contemplated to be a party; and be it further

**RESOLVED**, that any Authorized Officer of each DIP Guarantor be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of such DIP Guarantor, to execute and deliver such additional assignments, stock powers, powers of attorney, notices, lien perfection documents, consents to assignment, subordination agreements, interest rate protection and other hedging agreements, letters of credit and master letter of credit agreements, cash management agreements, assignments, collateral assignments, fee letters and other customary loan documents, third party collateral access agreements, bailee letters, deposit account control agreements, securities account control agreements, insurance certificates, UCC financing statements, mortgages, deeds of trust, warehouse notifications, collateral assignments, and other customary secured loan documents and other agreements, certificates, instruments and other writings as the DIP Agent may request or as may be necessary or appropriate in the sole judgment of such Authorized Officer to create, preserve and perfect the security interests and other liens required or contemplated pursuant to, or otherwise to give effect to any of the transactions contemplated by, any of the Additional DIP Guarantor Documents; and be it further

**RESOLVED**, that any Authorized Officer of each DIP Guarantor be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of such DIP Guarantor, to execute and deliver all such other agreements, certificates, instruments and other writings, and to take all such other actions, as any such Authorized Officer may deem necessary or appropriate in connection with the transactions contemplated by these resolutions (and the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement, the Interim DIP Order and the Final DIP Order); and be it further

**RESOLVED**, that each DIP Guarantor hereby authorizes, adopts and approves, in all respects the form, terms and provisions of the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement, the Interim DIP Order, the Final DIP Order and any other Additional DIP Guarantor Documents (including without limitation, the Guaranty of Obligations provided therein) substantially in the form to be executed and delivered and each DIP Guarantor's perfection thereunder; and be it further

Ratification           **RESOLVED**, that all actions, proceedings, elections, appointments, approvals, assignments, grants, transfers, agreements, acts, declarations, instruments, documents, executions and transactions, whether done, taken, executed or acted upon, or purported to be done, taken, executed or acted upon prior to the date hereof, by or on behalf of any DIP Guarantor in connection with the DIP Credit Agreement, the DIP

3

Security Agreement, the DIP Guaranty Agreement or any Additional DIP Guarantor Documents, be, and the same hereby are, approved, adopted, ratified and confirmed in all respects; and be it further

**General Authority**  **RESOLVED**, that any Authorized Officer of each DIP Guarantor be, and each of them hereby is individually, authorized, empowered and directed, in the name and on behalf of such DIP Guarantor, to take such additional actions, to perform all acts and deeds, and to execute, ratify, certify, deliver, file and record such additional agreements, certificates, instruments and other writings as any of them may deem necessary or appropriate to implement the provisions of the foregoing resolutions (including, without limitation, amendments, restatements, replacements or other modifications of any of the foregoing documents) or otherwise in connection with the DIP Credit Agreement, the DIP Security Agreement, the DIP Guaranty Agreement or any Additional DIP Guarantor Documents, to appoint such agents on behalf of such DIP Guarantor as any such Authorized Officer may deem necessary or appropriate in connection with the foregoing resolutions or to comply with the requirements of the agreements, certificates, instruments and other writings approved by the foregoing resolutions, the authority for the taking or performing of such actions, acts or deeds and the execution, ratification, certification, delivery, filing or recording of such agreements, certificates, instruments or other writings to be conclusively evidenced thereby; and be it further

**RESOLVED**, that, to the extent any DIP Guarantor serves as the sole member, managing member or other governing body (collectively, a "Controlling Company"), in each case, of any other company (a "Controlled Company"), each Authorized Officer, any one of whom may act without the joinder of any of the others, be, and each of them hereby is, severally authorized, empowered and directed in the name and on behalf of such Controlling Company (acting for such Controlled Company in the capacity set forth above, as applicable), to take all of the actions on behalf of such Controlled Company that an Authorized Officer is herein duly authorized to take on behalf of such Controlling Company; and be it further

**RESOLVED FURTHER**, that the authority conferred upon each Authorized Officer by these resolutions is in addition to, and shall in no way limit, such other authority as such Authorized Officer may have with respect to the subject matter of the foregoing resolutions, and that the omission from this resolution of any agreement or other arrangement contemplated by any of the agreements, instruments or documents described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, instruments or documents described in the foregoing resolutions shall in no manner derogate from the authority of such Authorized Officer to take all actions

4

necessary, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by and the intents and purposes of the foregoing resolutions.

# SCHEDULE I

# COMPANIES

CHINOS HOLDINGS, INC., a Delaware corporation
CHINOS INTERMEDIATE, INC., a Delaware corporation
CHINOS INTERMEDIATE HOLDINGS B, INC., a Delaware corporation
J. CREW GROUP, INC., a Delaware corporation
J. CREW OPERATING CORP., a Delaware corporation
J. CREW INC., a Delaware corporation
J. CREW INTERNATIONAL, INC., a Delaware corporation
GRACE HOLMES, INC., a Delaware corporation
H.F.D. NO. 55, INC., a Delaware corporation
MADEWELL INC., a Delaware corporation
J. CREW VIRGINIA, INC., a Virginia corporation
J. CREW BRAND HOLDINGS, LLC, a Delaware limited liability company
J. CREW BRAND INTERMEDIATE, LLC, a Delaware limited liability company
J. CREW BRAND, LLC, a Delaware limited liability company
J. CREW DOMESTIC BRAND, LLC, a Delaware limited liability company
J. CREW BRAND CORP., a Delaware corporation
J. CREW INTERNATIONAL BRAND, LLC, a Delaware limited liability company

**Fill in this information to identify the case:**

Debtor name:  Madewell Inc.

United States Bankruptcy Court for the Eastern District of Virginia

(State)

Case number (*If known*):

☐  Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders                                    12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Deloitte Consulting<br>Attn.:  Nick Handrinos<br>30 Rockefeller Plaza, 41st Floor<br>New York, New York 10112-0015<br>USA | Attn.:  Nick Handrinos<br>Phone:  (212) 492-4000<br>Email: nhandrinos@deloitte.com | Professional Services | Unliquidated | | | $22,747,294.00 |
| 2 | Cosmic Gear Limited<br>Attn.:  Sammy Hui<br>25 Wang Chiu Road<br>Kowloon Bay, KLN<br>Hong Kong | Attn.:  Sammy Hui<br>Phone:  34279988<br>Email: sammy.hui@cosmic-gear.com | General Unsecured Claim | Unliquidated | | | $14,305,544.00 |
| 3 | Sterling Apparel Ltd.<br>Attn.:  Sam Chung<br>9 Sheung Hei Street<br>San Po Kong, KLN<br>Hong Kong | Attn.:  Sam Chung<br>Phone:  852 23091823<br>Email: sam.chung@sphk.com.hk | General Unsecured Claim | Unliquidated | | | $13,683,285.00 |
| 4 | RGM Fashion Ltd.<br>Attn.:  Billy Wong<br>88 Lei Muk Road<br>Kwai Chung, NT<br>Hong Kong | Attn.:  Billy Wong<br>Phone:  2421-1212<br>Email: billyw@rgm-hk.com | General Unsecured Claim | Unliquidated | | | $12,631,201.00 |
| 5 | Fashion Accessories<br>Attn.:  Anoop Thatai<br>Phase VI Sector 37<br>Gurgaon Haryana,<br>India | Attn.:  Anoop Thatai<br>Phone:  91 124 4035046<br>Email: anoop@orientknits.com | General Unsecured Claim | Unliquidated | | | $11,092,743.00 |
| 6 | Kyung Seung Co Ltd.<br>Attn.:  JJ Park<br>408 Samseongro Gangnamgu<br>Seoul,<br>South Korea | Attn.:  JJ Park<br>Phone:  822 550 1440<br>Email: jjpark@kyungseung.com | General Unsecured Claim | Unliquidated | | | $10,250,359.00 |
| 7 | Aquarelle Clothing Limited<br>Attn.:  Maneesh Patel<br>Boundary Road<br>Quatre Bornes,<br>Mauritius | Attn.:  Maneesh Patel<br>Phone:  230-466-0833<br>Email: mpatel@laguna-clothing.mu | General Unsecured Claim | Unliquidated | | | $7,817,402.00 |
| 8 | China Ting Garment Mfg. (Group)<br>Attn.:  Peter Cheung<br>55 King Yip Street<br>Kwun Tong, KLN<br>Hong Kong | Attn.:  Peter Cheung<br>Phone:  86 571 8625 8180<br>Email: Peter@conceptcreator.com.hk | General Unsecured Claim | Unliquidated | | | $7,729,955.00 |

WEIL:\97454571\7\54457.0007

Madewell Inc.

Name

Case number (if known)     20-_____ (   )

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9  First Glory Limited<br>Attn.:  Steffi Chan<br>2 Cheung Yue Street.<br>Cheung Sha Wan, KLN<br>Hong Kong | Attn.:  Steffi Chan<br>Phone:  2786 1612<br>Email: steffic@firstglory.com | General Unsecured Claim | Unliquidated | | | $7,511,182.00 |
| 10  United Infinite Corp Taiwan Branch<br>Attn.:  Richard Lo<br>Jihu Road Neihu District<br>Taipei City, 114<br>Taiwan | Attn.:  Richard Lo<br>Phone:  886 2 8751 1768<br>Email: richard@kuohwa.com | General Unsecured Claim | Unliquidated | | | $7,142,987.00 |
| 11  R K Industries IV<br>Attn.:  Ajay Agarwal<br>No. A 7&8 Thiru-Vi-Ka Indl<br>Chennai 600032<br>India | Attn.:  Ajay Agarwal<br>Phone:  0961374/97-98<br>Email: ajay@rk-india.com | General Unsecured Claim | Unliquidated | | | $6,460,387.00 |
| 12  Saitex International Dong Nai<br>Attn.:  Sanjeev Bahl<br>Amata Ind Park Long Binh Ward<br>Bien Hoa City, 81000<br>Vietnam | Attn.:  Sanjeev Bahl<br>Phone:  84 61 8877 100<br>Email: sanjeev@sai-tex.com | General Unsecured Claim | Unliquidated | | | $5,924,440.00 |
| 13  Victory International Inc.<br>Attn.:  Michael Cioato<br>No. 77 Shengli 12th Street<br>Taichung, 310<br>China | Attn.:  Michael Cioato<br>Phone:  886 4 25317828<br>Email: michaelcioato@lfsourcing.com | General Unsecured Claim | Unliquidated | | | $5,890,914.00 |
| 14  Suy Co. Ltd.<br>Attn.:  Sunjian "SJ" Lee<br>461 Yeoksam-Ro Gangnam-Ku<br>Seoul, 135-280<br>South Korea | Attn.:  Sunjian "SJ" Lee<br>Phone:  82 2 558 4870<br>Email: aydenlee@suy.co.kr | General Unsecured Claim | Unliquidated | | | $5,737,742.00 |
| 15  UPS<br>Attn: Jason M. Owen<br>1000 Semmes Ave<br>Richmond, Virginia 23224<br>USA | Attn: Jason M. Owen<br>Phone:  (804) 814-7952<br>Email: jowen@ups.com | General Unsecured Claim | Unliquidated | | | $5,393,857.00 |
| 16  Hing Shing Looping Manufacturing<br>Attn.:  Scarlett Cheung<br>Flat B, 10/F, Wing Tai Centre<br>12 Hing Yip Street<br>Kwun Tong, KLN<br>Hong Kong | Attn.:  Scarlett Cheung<br>Phone:  852 3761 6300<br>Email: scarlett.cheung@hingshing.com.hk | General Unsecured Claim | Unliquidated | | | $5,384,210.00 |
| 17  Hoi Meng Sourcing<br>Attn.:  Winny Pak<br>No 371 Edificio Keng Ou 14 Andar D<br>Em Macau<br>Macau | Attn.:  Winny Pak<br>Phone:  853 2875 5101<br>Email: winny_pak@hoimeng.com | General Unsecured Claim | Unliquidated | | | $5,374,316.00 |
| 18  Manchu Times Fashion Limited<br>Attn.:  Michael Durbin<br>North Blockway Skyway House 3<br>Sham Mong Road, Tai Kok Tsui<br>Kowloon SN<br>Hong Kong | Attn.:  Michael Durbin<br>Phone:  852 27816111<br>Email: MichaelDurbin@ManchuTimesFashion.com | General Unsecured Claim | Unliquidated | | | $5,352,295.00 |
| 19  Tien-Hu Trading (Hong Kong) Ltd<br>Attn.:  Sammy Wong<br>55 Hung To Road<br>Kwun Tong, KLN<br>Hong Kong | Attn.:  Sammy Wong<br>Phone:  852 2328 8065<br>Email: sammy.wong@tienhu.com.hk | General Unsecured Claim | Unliquidated | | | $5,271,049.00 |

WEIL:\97454571\7\54457.0007

Madewell Inc.

Name

Case number (if known)    20-_____ (    )

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 20 Texma International Co. Ltd. Attn.: Roger Huang 114 Nei-Hu Taipei Taiwan | Attn.: Roger Huang Phone: 886-2-26598666 Email: roger@texma.com.tw | General Unsecured Claim | Unliquidated | | | $4,995,724.00 |
| 21 KNT Limited Attn.: Johnson Chong 120-124 Texaco Road Tsuen Wan 999077, NT Hong Kong | Attn.: Johnson Chong Phone: 852 3655 9688 Email: johnson@knt.com.hk | General Unsecured Claim | Unliquidated | | | $4,921,112.00 |
| 22 Luen Thai Overseas Macao Attn.: Stephen Chin RMS 1001-1005,10/F, Nanyang Plaza 57 Hung To Road Kwun Tong, Kowloon Hong Kong | Attn.: Stephen Chin Phone: 853 2851 9106 Email: stephenchindg.dluxe-bags.com | General Unsecured Claim | Unliquidated | | | $4,696,870.00 |
| 23 Pan Pacific Co .Ltd. Attn.: Simon Chong 12 Digital Ro 31 Gil Guro Gu Seoul, South Korea | Attn.: Simon Chong Phone: 82 2 850 9437 Email: simonchong@pti-pacific.com | General Unsecured Claim | Unliquidated | | | $4,422,706.00 |
| 24 Rio Apparel HK Ltd. Attn.: Susana Lee 77 Mody Road, Suite 1019, 10th Floor Tsimshatsui East, KLN Hong Kong | Attn.: Susana Lee Phone: (917) 671-8755 Email: susana.lee@rioapparel.com | General Unsecured Claim | Unliquidated | | | $4,356,988.00 |
| 25 Pro Sports Giao Thuy JSC Attn.: Chinthaka Ranasinghe 4A Area Ngo Dong Town Nam Dinh Province, 10000 Vietnam | Attn.: Chinthaka Ranasinghe Phone: 84 903806132 Email: chinthaka@pro-sports.com.vn | General Unsecured Claim | Unliquidated | | | $4,039,440.00 |
| 26 Deloitte Tax LLP Attn.: Brett Sherman 30 Rockefeller Plaza, 41st Floor New York, New York 10112-0015 USA | Attn.: Brett Sherman Phone: (212) 492-4000 Email: bssherman@deloitte.com | Professional Services | Unliquidated | | | $3,977,309.00 |
| 27 Gaurav International Attn.: Vijay Uppal Plot No. 236 Udyog Vihar Gurgaon, 7 India | Attn.: Vijay Uppal Phone: 91 124 4804000 Email: vijay@richagroup.com | General Unsecured Claim | Unliquidated | | | $3,719,593.00 |
| 28 D and J International Limited Attn.: Jennifer Lee 610 Nathan Road Mongkok, KLN Hong Kong | Attn.: Jennifer Lee Phone: 852 2737 9933 Email: Jenniferlee@dandj.cn | General Unsecured Claim | Unliquidated | | | $3,593,029.00 |
| 29 Wilmington Savings Fund Society, FSB Attn.: Gregg S. Bateman, Esq. 500 Delaware Avenue Wilmington, Delaware 19801 USA -and- Seward & Kissel LLP Attn: Gregg S. Bateman, Esq. One Battery Park Plaza New York, New York 10004 USA | Attn: Gregg S. Bateman, Esq. Phone: (212) 574-1436 Email: bateman@sewkis.com | Prepetition Term Loan Deficiency | Contingent, Unliquidated, Disputed | $1,342,121,219 | Undetermined | Undetermined |

Madewell Inc.

Name

Case number (if known)    20-_____ (    )

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 30  Eaton Vance Management c/o Brown Rudnick LLP Attn.: Sigmund S. Wissner-Gross, Esq. Seven Times Square New York, New York 10036 USA | Attn.: Sigmund S. Wissner-Gross, Esq. Phone: (212) 209-4800 Email: swissner-gross@brownrudnick.com | Litigation | Contingent, Unliquidated, Disputed | | | Undetermined |

WEIL:\97454571\7\54457.0007

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

---------------------------------------------------------- x
                                                           :
In re                                                      :        **Chapter 11**
                                                           :
**MADEWELL INC.,**                                         :        20-_____ (___)
                                                           :
                      Debtor.                              :
                                                           :
---------------------------------------------------------- x

**CONSOLIDATED CORPORATE OWNERSHIP STATEMENT PURSUANT**
**TO FEDERAL RULES OF BANKRUPTCY PROCEDURE 1007 AND 7007.1**

Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(1) and 7007.1, attached hereto as **Exhibit A** is an organizational chart reflecting all of the ownership interests in Chinos Holdings, Inc. ("**Holdings**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**").   The Debtors respectfully represent as follows:

The following entities own, directly or indirectly, 10 percent or more of Holdings' equity interests:

   a.  Certain funds sponsored by or affiliated with TPG Capital, L.P. collectively own approximately 55% of Holding's common stock (the "**Common Stock**") and approximately 66.2% of Holding's 7% non-convertible perpetual series B preferred stock (the "**Series B Preferred Stock**").

   b.  Certain funds sponsored by or affiliated with Leonard Green & Partners LP collectively own approximately 20.7% of the Common Stock and approximately 24.8% percent of the Series B Preferred Stock.

   c.  Certain funds sponsored by or affiliated with Anchorage Capital Group, L.L.C. collectively own approximately 25.6% of 7% non-convertible perpetual series A preferred stock (the "**Series A Preferred Stock**").

   d.  Certain funds sponsored by or affiliated with GSO Capital Partners LP collectively own approximately 26.1% percent of Series A Preferred Stock.

   e.  Certain funds sponsored by or affiliated with Goldman Sachs & Co. LLC owns approximately 15.5% of Series A Preferred Stock.

To the best of the Debtors' knowledge and belief, no other corporation directly owns 10% or more of any class of Holding's equity interests.

Holdings indirectly or directly owns all of the equity interests of each other Debtor.

## Exhibit A

**Organizational Chart**



**Fill in this information to identify the case:**

Debtor name: _Madewell Inc._

United States Bankruptcy Court for the _Eastern District of Virginia_
(State)

Case number (*If known*): _____

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors            12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING –** Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ Schedule A/B: Assets–Real and Personal Property (Official Form 206A/B)

☐ Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

☐ Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

☐ Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)

☐ Schedule H: Codebtors (Official Form 206H)

☐ Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

☐ Amended Schedule _____

☑ Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)

☑ Other document that requires a declaration _Consolidated Corporate Ownership Statement_

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _May 4, 2020_     ✗ _/s/ Michael J. Nicholson_
MM / DD /YYYY              Signature of individual signing on behalf of debtor

_Michael J. Nicholson_
Printed name

_President and Chief Operating Officer_
Position or relationship to debtor

Official Form 202                    Declaration Under Penalty of Perjury for Non-Individual Debtors